**United States District Court**
For the Northern District of California

1
2
3
4
5
6                 IN THE UNITED STATES DISTRICT COURT
7              FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9                                   )  Case No. C 13-0690 SC
                                    )
10  DIANA PARKER, individually and  )  ORDER DENYING MOTION TO DISMISS
    on behalf of all others         )
11  similarly situated,             )
                                    )
12           Plaintiff,             )
                                    )
13      v.                          )
                                    )
14  J.M. SMUCKER CO.,               )
                                    )
15           Defendant.             )
                                    )
16  _____)
17
18
19  **I.   INTRODUCTION**
20        Now before the Court is Defendant J.M. Smucker Co.'s
21  ("Defendant") motion to dismiss Plaintiff Diana Parker's
22  ("Plaintiff") amended class action complaint.  ECF Nos. 16 ("FAC"),
23  20 ("MTD").  The motion is fully briefed, ECF Nos. 22 ("Opp'n"), 24
24  ("Reply"), and appropriate for decision without oral argument, Civ.
25  L.R. 7-1(b).  For the reasons explained below, the Court DENIES
26  Defendant's motion.
27  ///
28  ///

**United States District Court**
For the Northern District of California

## II.   **BACKGROUND**

Defendant is an Ohio corporation that manufactures a variety of food products, including the four types of Crisco cooking oil at issue in this case: Crisco Pure Vegetable Oil, made from soybean oil; Crisco Pure Canola Oil, made from rapeseed oil; Crisco Pure Corn Oil, made from corn oil; and Crisco Natural Blend Oil, made from combined rapeseed, sunflower, and soybean oil.  FAC ¶¶ 9-14 (collectively, these products are the "Oils").  Plaintiff is a California resident who purchased Crisco Pure Vegetable Oil.  Id. ¶ 8.  She brings this suit on behalf of herself and other people who have purchased the Oils.  Id. ¶ 3.

Plaintiff's claims are based on a single fact: all of the Oils include the label "All Natural" next to the Oil's name on the packaging.  See id. ¶¶ 11-14.  Plaintiff claims that the Oils are not "natural" at all, because they are made with genetically modified ("GM or "bioengineered") crops, and are also "so heavily processed that they bear no chemical resemblance to the ingredients from which they were derived."  Id. ¶ 1.  As Plaintiff alleges, consumers like her are drawn to "All Natural" products because those products are perceived to be "better, healthier, and more wholesome."  Id. ¶ 2.  Labels like Defendant's therefore trick consumers into buying products they otherwise would have avoided, whether due to health concerns or mere preference.  See id. ¶¶ 2, 8.

Plaintiff's first basis for her suit, that food derived from GM crops cannot be natural, is based on an array of definitions from industry, government, and health organizations.  Id. ¶¶ 16-20. These definitions all characterize bioengineered crops as having

1   been scientifically altered to combine one plant's genetic material

2   with another's in ways that do not occur naturally.  See id. ¶¶ 16-

3   20.  She also asserts that "[o]ver 70% of U.S. corn, over 90% of

4   U.S. soy, and over 80% of U.S. canola crops are GM," and that

5   Defendant sources its ingredients from U.S. commodity suppliers who

6   supply GM crops.  Id. ¶ 21.  Plaintiff's claims include only one

7   factual statement from Defendant itself about GM crops, taken from

8   its "Statement Regarding Genetic Modification": "Due to expanding

9   use of biotechnology by farmers and commingling of ingredients in

10  storage and shipment, it is possible that some of our products may

11  contain ingredients derived from biotechnology."  Id. ¶ 22.

12  Plaintiff links these facts together to conclude that Defendant

13  must be using non-natural GM crops in its Oils, and therefore that

14  the "All Natural" statement that appears on Defendant's Oils is

15  actionably false, misleading, or unfair.  Id. ¶ 23.

16      Plaintiff's second, separate factual ground for this suit --

17  that the Oils are not natural because they are highly processed and

18  no longer retain their source-plants' original chemical properties

19  -- is based on distinctions among oil-manufacturing processes.  Id.

20  ¶ 24.  Plaintiff first describes extraction methods like cold-

21  pressing, which she says "allow the oils to retain the chemical

22  composition occurring in nature."  Id. ¶ 25.  She then contrasts

23  this process with the less mechanical, more chemical methods she

24  says Defendant uses to make its Oils.  See id. ¶ 26.  According to

25  Plaintiff, Defendant begins its manufacturing process by physically

26  extracting oil from vegetables, but after that, the raw oil becomes

27  unrecognizably modified.  See id. ¶¶ 27-30.  There are several

28  steps to this process: alkali-neutralization, meant to separate

3

**United States District Court**
For the Northern District of California

1    free fatty acids from the neutralized oil; bleaching and

2    deodorizing, meant to lighten the oil's color and minimize its

3    odor; and conditioning. <u>Id.</u> ¶¶ 28-30. Plaintiff alleges that in

4    all of these steps, Defendant treats the Oils with harsh,

5    potentially harmful chemicals that render the Oils less like

6    natural oils extracted mechanically and more like unnatural

7    chemical composites. <u>See id.</u>

8       Based on the above facts, Plaintiff asserts three causes of

9    action against Defendant: (i) violation of California's Consumer

10   Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, <u>et seq.</u>; (ii)

11   violations of California's Unfair Competition Law ("UCL"), Cal.

12   Bus. & Prof. Code § 17200, <u>et seq.</u>; and (iii) breach of express

13   warranty. FAC ¶¶ 39-62. Defendant now moves to dismiss, arguing

14   that (i) Plaintiff's FAC fails to meet federal pleading standards;

15   (ii) federal law preempts Plaintiff's claims; (iii) the Court

16   should dismiss the FAC under the primary jurisdiction doctrine;

17   (iv) and Plaintiff fails to state claims under each cause of action

18   she pleads. <u>See</u> MTD at 2-4.

19

20   **III. <u>LEGAL STANDARD</u>**

21       A motion to dismiss under Federal Rule of Civil Procedure

22   12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v.</u>

23   <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based

24   on the lack of a cognizable legal theory or the absence of

25   sufficient facts alleged under a cognizable legal theory."

26   <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

27   1988). "When there are well-pleaded factual allegations, a court

28   should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." <u>Ashcroft v.</u>
<u>Iqbal</u>, 556 U.S. 662, 679 (2009).  However, "the tenet that a court
must accept as true all of the allegations contained in a complaint
is inapplicable to legal conclusions.  Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." <u>Id.</u> at 678 (citing <u>Bell Atl. Corp. v.</u>
<u>Twombly</u>, 550 U.S. 544, 555 (2007)).  The allegations made in a
complaint must be both "sufficiently detailed to give fair notice
to the opposing party of the nature of the claim so that the party
may effectively defend against it" and "sufficiently plausible"
such that "it is not unfair to require the opposing party to be
subjected to the expense of discovery." <u>Starr v. Baca</u>, 652 F.3d
1202, 1216 (9th Cir. 2011).

    Additionally, allegations of fraud must meet the heightened
pleading standard of Federal Rule of Civil Procedure 9(b), which
requires that plaintiffs alleging fraud "must state with
particularity the circumstances constituting fraud." <u>Kearns v.</u>
<u>Ford Motor Co.</u>, 567 F.3d 1120, 1125-27 (9th Cir. 2009).  "To
satisfy Rule 9(b), a pleading must identify the who, what, when,
where, and how of the misconduct charged, as well as what is false
or misleading about the purportedly fraudulent statement, and why
it is false." <u>United States ex rel Cafasso v. Gen. Dynamics c$</u>
<u>Sys.</u>, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks
and citations omitted).

///
///
///
///

**United States District Court**
For the Northern District of California

**IV.   DISCUSSION**

    **A.   Pleading Issues**

Defendant argues that Plaintiff's FAC fails to plead with particularity or plausibility either that the Oils contain GM ingredients or that Defendant's processing makes the Oils otherwise non-natural.  MTD at 9-12.

As to the first theory, Defendant argues that Plaintiff fails to allege that the Oils actually contain non-natural ingredients -- only that it is highly likely that they are, given the percentage of GM crops in the U.S. and the fact that Defendant admits the possibility of using such crops.  See id. at 9-10.  Defendant is correct that Plaintiff must provide "more than a sheer possibility" that the Oils contain GM ingredients, see Iqbal, 556 U.S. at 678, but the Court finds Plaintiff's pleadings sufficiently plausible on this point.

As to Plaintiff's second theory, Defendant claims that Plaintiff does not allege with sufficient specificity that the Oils contain trace chemicals, and that Plaintiff does not explain how the process she describes render the Oils "chemically altered." MTD at 11-12.  Defendant adds that Plaintiff's claims contravene FDA regulations and policy -- discussed further below -- such that her allegations are implausible under Twombly and Iqbal.  Id.  The Court finds that Plaintiff pleads this theory with sufficient specificity to satisfy Rule 9(b).  Plaintiff does not need to set out scientifically precise descriptions of how the Oils' chemical makeup changes.  She only needs to describe the who, what, when, where, and how of the allegedly misleading conduct, which she has done: Plaintiff's FAC describes Defendant's chemical processing of

the Oils, states that this renders them non-natural, and concludes
that if the Oils are non-natural then the "All Natural" tag is
false or misleading.  See Cafasso, 637 F.3d at 1055.  The truth of
this theory remains to be litigated, but it cannot be dismissed on
the pleadings.

**B.   Standing**

Since Plaintiff pleads that she only purchased Crisco Pure
Vegetable Oil, not any of the other three Oils, Defendant concludes
that Plaintiff lacks standing to sue based on the other three Oils.
MTD at 24.  Plaintiff responds that she has standing not just based
on the purchases, but on Defendant's business practices, and that
since the Oils are substantially similar, Plaintiff has standing to
represent purchasers of all four Oils.  Opp'n at 22-23.  Plaintiff
is correct.  It is true that "there is authority going both ways"
on standing issues like this one.  See Astiana v. Dreyer's Grand
Ice Cream, Inc., No. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D.
Cal. July 20, 2012).  But "the critical inquiry seems to be whether
there is sufficient similarity between the products purchased and
not purchased," such as whether the products are of the same kind,
whether they are comprised of largely the same ingredients, and
whether each of the challenged products bears the same alleged
mislabeling.  Id. at *13; see also Colucci v. ZonePerfect Nutrition
Co., No. 12-2907 SC, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28,
2012).

The Court finds that there is sufficient similarity between
Crisco Pure Vegetable Oil and the other three Oils identified in
Plaintiff's FAC.  They are all the same kind of product.  They all
have highly similar labels.  Plaintiff alleges the same actionable

**United States District Court**
For the Northern District of California

1   conduct as to each of them.  This is enough for the Court to

2   conclude that Plaintiff has standing to sue for alleged mislabeling

3   of all four Oils.

4       **C.   <u>Preemption</u>**

5       Defendant argues that Plaintiff's claims are preempted because

6   they conflict with both FDA policies on bioengineered foods and

7   federal food labeling regulations.  MTD at 12-17.

8       First, Defendant claims that FDA policies make clear that the

9   FDA has, for years, rejected the argument that bioengineered foods

10  must be labeled differently, since the FDA has determined that

11  there is no material difference (for labeling purposes) between

12  bioengineered foods and non-bioengineered foods.  <u>Id.</u> at 12-13.

13      For example, in 1992, the FDA declared that it would regulate

14  bioengineered foods under its existing regulatory framework,

15  "utilizing an approach identical in principle to that applied to

16  foods developed by traditional plant breeding."  Statement of

17  Policy: Foods Derived from New Plant Varieties, 57 F.R. 22984-01

18  (May 29, 1992) (the "1992 Policy").[1]  The FDA concluded that

19  bioengineered foods need not be labeled differently from non-

20  bioengineered foods unless they differ so much that the "common or

21  usual name" no longer applies to the bioengineered food."  <u>Id.</u> at

22  22991.  In 1993, the FDA issued a public request for more data and

23  information about the labeling of bioengineered foods, but

24  afterward stated again that the use of bioengineered food was not

25

26  [1] This and other FDA documents cited in this Order appear as
    exhibits to Defendant's Request for Judicial Notice, ECF No. 21
27  ("Def.'s RJN"), which the Court GRANTS under Federal Rule of
    Evidence 201 because they are public, government documents.  The
28  Court cites to the Federal Register for documents that appear
    there, and to Defendant's RJN for those that do not.

United States District Court
For the Northern District of California

1    "material" and did not need to be specially disclosed.  Food

2    Labeling: Foods Derived from New Plant Varieties, 58 F.R. 25837-03,

3    25839 (Apr. 28, 1993).

4        The FDA has reiterated as recently as 2001 and 2005 that it

5    finds no basis for requiring special labeling of bioengineered

6    foods.  See MTD at 5-6; Def.'s RJN Exs. 4 (FDA guidance on

7    voluntary bioengineering labeling), 5 (FDA statement before the

8    Senate on bioengineering labeling).  This Court has also confirmed

9    that at no point has the FDA stated any intention to alter its

10   longstanding position not to adopt any regulations governing the

11   term "natural," regardless of consumers being misled.  See, e.g.,

12   Lockwood v. Conagra Foods, Inc., 597 F. Supp. 2d 1028, 1033-34

13   (N.D. Cal. 2009).

14       Based on these numerous instances of FDA refusal to adopt

15   regulations requiring the disclosure of bioengineered ingredients

16   or further defining the term "natural," Defendant concludes that

17   Plaintiff's lawsuit "seeks to impose new and different labeling

18   standards for products that may have bioengineered ingredients."

19   MTD at 13.  Plaintiff responds that this is not really what her

20   case concerns.  She alleges that the "All Natural" statement is

21   false or misleading since the Oils are not, in fact, 100 percent

22   natural.  See Opp'n at 13-15.

23       Defendant replies by arguing that whatever the basis of

24   Plaintiff's claim, her goal is ultimately to require that

25   bioengineered foods be labeled differently from non-bioengineered

26   foods in a way preempted by federal law.  Reply at 11-12.  This is

27   not an accurate statement of Plaintiff's argument.  Under

28   Plaintiff's theory, Defendant could have simply left "All Natural"

off the labels.  But because they included the phrase, Plaintiff
claims that the labels are misleading.  This is not a preempted
theory.  Defendant may not affirmatively be required to disclose
its use of bioengineered ingredients (if any exist at all), but
Plaintiff is only alleging that the "All Natural" claim might be
untrue and misleading if Defendant in fact does use bioengineered
ingredients or processing techniques that render a natural
ingredient non-natural.  Plaintiff's claim is therefore not
preempted on these grounds.

Defendant also argues that FDA regulations governing the
identification of common ingredients preempts Plaintiff's state law
claims.  The Food, Drug, and Cosmetics Act ("FDCA"), as amended by
the Nutrition Labeling and Education Act ("NLEA"), is the operative
statute in this case, establishes a regulatory scheme for food
labeling.  21 U.S.C. § 341 et seq.  Congress has given the Food and
Drug Administration (the "FDA") regulatory authority over food
labeling due to the need for expertise and uniformity in that
field, and has also stated that federal law preempts state law on
food labeling: "[N]o State . . . may directly or indirectly
establish . . . any requirement for the labeling of food that is
not identical to the [FDCA]."  Id. § 343-1(a).

On this point, Defendant essentially argues that because the
FDA requires food producers to label ingredients according to their
common or usual names, and the FDA does not require bioengineered
ingredients to be so labeled, Defendant would violate FDA
regulations if it referred to the Oils' ingredients as, for
example, "bioengineered soy."  MTD at 14-17 (citing 21 C.F.R. §
102.5(a) (setting out this regulation)).  According to Defendant,

**United States District Court**
For the Northern District of California

1   Plaintiff's theory would require food labeling that is not
2   identical to the FDCA and is therefore preempted.  Id.

3       Defendant's argument fails.  Again, Plaintiff is not demanding
4   that Defendant label its products differently, even though she
5   alleges that she would not have bought any of the Oils had they
6   been labeled as including bioengineered ingredients, for example.
7   And this is not a case in which a plaintiff sued a food producer
8   for not disclosing its use of bioengineered ingredients.  Rather,
9   Plaintiff sued Defendant for allegedly making a false or misleading
10  statement on its products.  It is not even implied in Plaintiff's
11  theory that Defendant should have labeled the product differently,
12  just that it should not have included a certain label that is
13  allegedly false or misleading.  This theory is not preempted.

14      Accordingly, the Court finds that Plaintiff's claims are not
15  preempted by FDA regulations or federal food labeling laws.
16  Defendant's motion is DENIED on this point.

17      D.  **Plaintiff's State Law Claims**

18          i.    **UCL, CLRA, and FAL claims**

19      Defendant moves to dismiss Plaintiff's state law causes of
20  action for failure to state a claim.  Plaintiff's first two causes
21  of action are for violations of the CLRA and UCL, respectively,
22  though the latter claim is predicated on alleged violations of the
23  CLRA and California's False Advertising Law ("FAL"), Cal. Bus. &
24  Prof. Code § 17500, et seq.

25      The CLRA prohibits "unfair methods of competition and unfair
26  or deceptive acts or practices."  Cal. Civ. Code § 1770.  Plaintiff
27  relies on sections of the CLRA that prohibit the following:
28  misrepresenting the source of a product, id. § 1770(a)(2);

**United States District Court**
For the Northern District of California

misrepresenting the characteristics, ingredients, or benefits of a product, id. § 1770(a)(5); misrepresenting the standard, quality, or grade of a product, id. § 1770(a)(7); advertising a product without intent to sell it as advertised, id. § 1770(a)(9); and misrepresenting that a product has been supplied in accordance with previous representations, id. § 1770(a)(16). Plaintiff claims that because Defendant represented that the Oils were "all natural" when they were not, it violated the CLRA.

The UCL prohibits all unlawful, unfair, or fraudulent conduct. See Cal. Bus. & Prof. Code § 17200. Each prong can be a separate cause of action. Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007). A plaintiff can state a claim under the unlawfulness prong by pleading that a business practice violates a predicate law. See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (Cal. 1999). Unfairness claims can be based on business practices that violate established public policy or are immoral, unethical, oppressive, or unscrupulous, which cause injury to consumers outweighing the practice's benefits. McKell v. Wash. Mutual, Inc., 142 Cal. App. 4th 1457, 1473 (Cal. Ct. App. 2006). Plaintiffs can state claims under the fraudulent prong by pleading that a defendant's business practices are likely to deceive members of the public. Morgan v. AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1254 (Cal. Ct. App. 2009). Plaintiff alleges (1) that Defendant violated the unlawful prong by violating the CLRA and FAL, since the "All Natural" label is allegedly false; (2) that Defendant's conduct is unfair because it undermines the UCL and CLRA, and is offensive or injurious to the public without countervailing beneficial effects;

1    and (3) that Defendant's practices are fraudulent because they are

2    likely to deceive reasonable consumers.

3        Defendant's only argument as to these claims is that, as a

4    matter of law, Plaintiff fails to allege that Defendant's "All

5    Natural" statements would be likely to deceive a reasonable

6    consumer.  MTD at 21 (citing <u>Freeman v. Time, Inc.</u>, 68 F.3d 285,

7    289 (9th Cir. 1995); <u>see also</u> <u>Williams v. Gerber Prods. Co.</u>, 552

8    F.3d 934, 938 (9th Cir. 2008) ("reasonable consumer" standard

9    applies to UCL, CLRA, and FAL claims).

10       Under the reasonable consumer standard, Appellants must "show

11   that 'members of the public are likely to be deceived.'"  <u>Freeman</u>,

12   68 F.3d at 289 (quoting <u>Bank of West v. Super. Ct.</u>, 2 Cal. 4th

13   1254, 1267 (Cal. Ct. App. 1992)). "Likely to be deceived" implies

14   more than a mere possibility of misunderstanding -- "likelihood"

15   here is measured in terms of whether a significant portion of the

16   general consuming public might be misled.  <u>Lavie v. Procter &</u>

17   <u>Gamble Co.</u>, 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003).  The

18   California Supreme Court has recognized "that these laws prohibit

19   'not only advertising which is false, but also advertising which[,]

20   although true, is either actually misleading or which has a

21   capacity, likelihood or tendency to deceive or confuse the

22   public.'"  <u>Kasky v. Nike, Inc.</u>, 27 Cal. 4th 939, 951 (Cal. 2002).

23       According to Defendant, the Court should dismiss Plaintiff's

24   state law claims as a matter of law because Plaintiff has not

25   articulated, in plausible terms, why any alleged presence of

26   bioengineered ingredients in the Oils would render the "All

27   Natural" statement misleading in light of FDA policy on

28   bioengineered ingredients and the term "natural."  <u>See</u> MTD at 22-

United States District Court
For the Northern District of California

13

**United States District Court**
For the Northern District of California

1   24.

2        The Court cannot make such a finding at this time.  While

3   Defendant is right that this Court and others have dismissed claims

4   like these at the pleading stage for not being plausibly misleading

5   to a reasonable consumer, Defendant's argument is too attenuated

6   and relies on mischaracterizations of Plaintiff's claims, as noted

7   above.  See supra, Section IV.C.  Moreover, the Court cannot as a

8   matter of law conclude, as Defendant urges, that reasonable

9   consumers would all understand that packaged, non-organic foods may

10  contain bioengineered ingredients and that the only way to avoid

11  such ingredients completely is to buy only certified organic

12  products.  MTD at 23.  Plaintiff's argument is much simpler than

13  that, and it does not depend on a conflation of "natural" with

14  "organic."  Rather, Plaintiff has alleged that a reasonable

15  consumer would read the "All Natural" label, assume that such a

16  product contains no bioengineered or chemically altered

17  ingredients, and would then be misled if the product did in fact

18  contain such things.

19       Since the reasonable consumer issue cannot be resolved as a

20  matter of law at this point, the Court finds that Plaintiff has

21  sufficiently stated claims under the UCL and CLRA.  See also

22  Williams, 552 F.3d at 938-39 (whether practices are deceptive,

23  fraudulent, or unfair is generally a question of fact not

24  resolvable at the pleading stage).  Defendant's motion on this

25  point is DENIED.

26       **ii.**   **Express Warranty**

27       Plaintiff alleges that Defendant's product labels constitute

28  express warranties that became part of the basis of Plaintiff's

United States District Court
For the Northern District of California

1   bargain with Defendant, such that Defendant's failure to deliver an

2   "All Natural" product constituted a breach of warranty.  FAC ¶¶ 57-

3   62.  Defendant argues that Plaintiff's express warranty claim must

4   be dismissed because the "All Natural" label is mere puffery, not

5   an affirmation of fact; and that Plaintiff lacks privity with

6   Defendant.  MTD at 25.  Plaintiff responds that advertising

7   statements can constitute express warranties, that Defendant's

8   label is not non-actionable puffery, and that California warranty

9   law includes an exception to the general rule requiring privity in

10  warranty actions, permitting breach of express warranty claims

11  arising from affirmations of fact made by manufacturers in labels

12  or advertisements.  Opp'n at 24-25.

13      The Court finds that Plaintiff has alleged sufficient facts to

14  make out a claim for breach of express warranty.  "All Natural" is

15  an affirmative claim about a product's qualities, and it does not

16  amount to mere puffery because it is not outrageous and

17  generalized.  See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection

18  Servs., Inc., 911 F.2d 242, 246 (9th Cir. 199) (puffery is

19  "outrageous generalized statements"); Keith v. Buchanan, 173 Cal.

20  App. 3d 13, 22 (Cal. Ct. App. 1985) (advertising statements can be

21  construed as warranties).  Moreover, Plaintiff is correct that

22  California law provides an exception in express warranty claims

23  arising from affirmative representations made in labels.  Burr v.

24  Sherwin Williams Co., 42 Cal. 2d 682, 696 (Cal. 1954) (affirming

25  exception).  Moreover, this case is not based on the California

26  Magnuson-Moss Act governing express warranties, which concerns

27  defects -- therefore the line of cases addressing warranty claims

28  under that statute does not apply here.  See, e.g., Dreyer's Grand,

15

United States District Court
For the Northern District of California

1  2012 WL 2990766, at *3.  Defendant's motion on this point is

2  therefore DENIED.

3      **E.    <u>Primary Jurisdiction</u>**

4      "The primary jurisdiction doctrine allows courts to stay

5  proceedings or to dismiss a complaint without prejudice pending the

6  resolution of an issue within the special competence of an

7  administrative agency."  <u>Clark v. Time Warner Cable</u>, 523 F.3d 1110,

8  1114 (9th Cir. 2008).  "[T]he doctrine is a 'prudential' one, under

9  which a court determines that an otherwise cognizable claim

10 implicates technical and policy questions that should be addressed

11 in the first instance by the agency with regulatory authority over

12 the relevant industry rather than by the judicial branch."  <u>Id.</u>

13     The Court does not find that primary jurisdiction is

14 appropriate here.  As noted above and in other cases, various

15 parties have repeatedly asked the FDA to rule on "natural"

16 labeling, and the FDA has declined to do so because of its limited

17 resources and preference to focus on other priorities.  <u>See, e.g.</u>,

18 <u>Janney v. General Mills</u>, No. C 12-3919 PJH, 2013 WL 1962360, at *6

19 (N.D. Cal. May 10, 2013) (noting that the FDA generally refers

20 parties to its policy statements on "natural," as described above,

21 and that the FDA appears to have little interest in addressing the

22 issue anew); <u>Lockwood</u>, 597 F. Supp. 2d at 1035 (same).  Even if the

23 Court found that the primary jurisdiction doctrine applied to this

24 case, referring the matter to the FDA would do little more than

25 protract matters.  Defendant's motion is DENIED on this point.

26 ///

27 ///

28 ///

16

**V.**    **CONCLUSION**

As explained above, Defendant J.M. Smucker Co.'s motion to dismiss Plaintiff Diana Parker's amended class action complaint is DENIED.

IT IS SO ORDERED.

Dated: August 23, 2013           
_____

UNITED STATES DISTRICT JUDGE